Floyd GUTHRIE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–83–51.

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1984.

Rehearing Denied April 17, 1984.

Bruce Green, Green & Green, Muskogee, for appellant.

Michael C. Turpen, Atty. Gen. of Oklahoma, Susan Brimer Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge.

Floyd Guthrie was convicted at a non-jury trial of Unlawful Possession of Marijuana With Intent to Distribute. He was sentenced to three (3) years' imprisonment, with eighteen months suspended, and a five thousand dollar ($5,000) fine. On appeal, we affirm.

Appellant first contends that the evidence of the State was insufficient, in that it failed to exclude every reasonable hypothesis except that of guilt. This contention is not well taken.

■■■ In order to convict the appellant, the State was obliged to show that he had knowledge of the presence of marijuana, and dominion and control over it. If circumstantial evidence is relied upon, it must exclude every reasonable hypothesis except that of guilt, and proof amounting to strong suspicion or mere probability is insufficient. *Brown v. State*, 481 P.2d 475 (Okl.Cr.1971). When implementing this standard, we consider the evidence and its inferences in a light most favorable to the State. *Rudd v. State*, 649 P.2d 791 (Okl. Cr.1982). Moreover, it is the State's evidence alone which must be considered; any conflict between the State's evidence and that of the defense is for the jury's consideration. *Gray v. State*, 561 P.2d 83 (Okl. Cr.1977).

Applying these principles to the evidence of the State, we find that it was sufficient. On September 14, 1980, lawmen executing a search warrant found a large box and six twenty-five pound sacks of cut and manicured marijuana buried under grain in a round metal building on appellant's farm. They also found marijuana on a screen suspended horizontally from the rafters of a barn on the land.

The State offered evidence to establish that a field of marijuana was under cultivation on appellant's farm as recently as July 23, 1980. An aerial photograph taken that day for the U.S. Agricultural Stabilization and Conservation Service depicted a patch of dark-green vegetation west of appellant's residence. The patch covered an estimated six-tenths of an acre, and was surrounded by a fringe of other vegetation which was brown in color.

The color of the patch contrasted with that of surrounding areas, which were suffering from severe drought, suggesting that it had been under irrigation. The patch was similar to an area on the farm of appellant's brother, which contained what was believed to be the remnants of a marijuana crop on the date of the search. Some two-inch hose, seventy-five to one hundred feet in length, extended across a field west of appellant's residence in the general direction of the patch.

The lawmen executing the search warrant did not find any growing marijuana on appellant's land. They did find a field of stubble, not believed to be marijuana, in part of an area on the photograph containing either the dark-green patch or a barren brown area just north of it.

Appellant denied knowledge of the marijuana in the grain bin and the screen in the barn. He offered evidence that his brother put the marijuana in the bin two days before the raid without appellant's knowledge, and suggested that a former farm hand may have placed the screen in the barn two or three months before the search. He also insisted that the dark-

green patch on the photograph was in fact bermuda grass and fescue growing in seepy soil.

■ Conflicts in the evidence are for the trier of fact, *Gray v. State*, supra. The undisputed evidence of a large quantity of marijuana in appellant's grain bin, coupled with the other evidence presented by the prosecution, was sufficient to support the verdict.

■ Appellant next contends that the search violated the constitutional ban against unreasonable searches and seizures. He asserts that the search warrant affidavit was insufficient to establish probable cause for the issuance of the search warrant. However, inasmuch as appellant has failed to include the affidavit in the record on appeal, this contention is not properly before us. It is the responsibility of the defendant to present enough of the record to allow review of alleged error. *Wright v. State*, 559 P.2d 852 (Okl.Cr. 1977).

Appellant further contends that his motion for new trial on the ground of newly discovered evidence was improperly denied. Appellant submitted the affidavit of his brother, who averred that he put the marijuana in the grain bin without appellant's knowledge.

■ Whether a motion for new trial on the ground of newly discovered evidence will be granted is within the discretion of the trial judge, and should not be granted except where there is a reasonable probability that, if the evidence had been introduced, different results would have been reached. *Garcia v. State*, 545 P.2d 1295 (Okl.Cr.1976). In this case, the trial judge, as the trier of fact at trial, was in a unique position to assess the likely impact of the brother's testimony, and we find no abuse of discretion in his denial of the motion. Moreover, the proffered testimony would have incriminated the brother, and we have held that a motion for new trial on the ground of newly discovered evidence may be denied in the discretion of the trial judge

where, at a subsequent trial, the witness could invoke the privilege against self-incrimination and refuse to testify. See *Williams v. State*, 505 P.2d 186 (Okl.Cr.1972).

■ Finally, appellant contends that the search warrant was not executed by a proper officer. This is based on the assertion that the officers, Muskogee City police officers, had no authority to act outside their city limits. Appellant has failed to include the search warrant in the record on appeal. However, assuming that the warrant was directed in part to "any ... policeman ... in Muskogee County, Oklahoma," as alleged by appellant, the officers had authority to serve the warrant under 22 O.S.1981, § 1227. See *Guthrie v. State*, 668 P.2d 1147 (Okl.Cr.1983).

The final proposition of error is without merit, and the judgment and sentence is AFFIRMED.

BUSSEY, P.J., specially concurs.

BRETT, J., dissents.

BUSSEY, Presiding Judge, specially concurring.

I agree that the judgment and sentence should be affirmed and that the record is free from any errors which would justify modification, and wish only to observe that the affidavit of the brother was not newly discovered evidence, since, at most, it only tended to corroborate the appellant's testimony at trial.

BRETT, Judge, dissenting.

I respectfully dissent to this decision, notwithstanding the fact that the affidavit for search warrant and the search warrant are not contained in the original record.[1] After having read the transcript of testimony, I would grant appellant a new trial.

## I.

It is clear that the search warrant was issued on the basis of two facts: The Highway Patrol aircraft pilot radioed that there

---

1. The affidavit for search warrant for C.O. Guthrie's farm was contained in the original record.

was a field "similar" to the field on C.O. Guthrie's land. C.O. Guthrie is the brother of appellant and marijuana stubble was found to exist on C.O.'s farm, and some marijuana was also apparently found. Secondly, appellant was observed burning something on his property. These two facts seem to be the only basis for the search warrant affidavit, according to the testimony of the officer that signed the affidavit.

The appellant's motion to suppress the evidence obtained by search warrant was twice granted by the examining magistrate. On March 17, 1981, the examining magistrate conducted appellant's preliminary examination. At the conclusion of that hearing, defense counsel demurred to the evidence, moved to quash the information. Having filed a motion to suppress the evidence because of a faulty affidavit for search warrant, appellant moved that it be sustained. The magistrate took the matter under advisement and informed both counsel that he would rule on both informations (C.O. Guthrie's CRF–80–423, and Floyd Guthrie's information CRF–80–422) at a later date. Thereafter, on March 27, 1981, the examining magistrate bound C.O. Guthrie over for trial. The magistrate then stated, "In case CRF–80–422, State of Oklahoma vs. Floyd Guthrie, preliminary hearing in that case was held March 21, 1981." At the conclusion of all testimony, the defendant moved to quash the search warrant and to suppress the evidence obtained pursuant to the warrant. The motion was taken under advisement and set for ruling.

"THE COURT: Does either party have anything they want to say in this matter?

MR. PAYTON: Nothing on behalf of the defendant.

THE COURT: What says the State?

MR. THOMAS: Nothing additional."

The magistrate then sustained the defendant's motion to suppress and the State gave notice to take a Rule 6 appeal, which allows the matter to be reviewed by one of the other district judges.

On May 15, 1981, the Rule 6 appeal was held before the Honorable O.C. Craig, Associate District Judge of Okfuskee County. The State asserted that they were not given a hearing on the motion before the examining magistrate and therefore the matter should be remanded to a magistrate other than the Honorable J.R. Settle, who ruled against the State. Judge Craig did not agree with the State's position, but in order to be abundantly fair remanded the motion to suppress to Judge Settle, acting as magistrate, for a special hearing.

On July 15, 1981, the Honorable J.R. Settle held the second hearing on the defendant's motion to quash the search warrant and again sustained the motion. It was the State's position that the "Open Fields" doctrine applied and a search warrant was not required. However, the magistrate determined that the entry upon the defendant's land was by virtue of the search warrant, and because the affidavit for search warrant was insufficient, he sustained the motion to suppress. A second time the State served notice to take a Rule 6 appeal.

On July 27, 1981, the second Rule 6 appeal was taken before the Honorable Anne Moroney, Associate District Judge for Okmulgee County. Judge Moroney ruled that the open fields doctrine applied and that the search warrant was not required. She remanded the matter to the examining magistrate with instructions to sustain the search.

Subsequently at trial, most of the discussion revolved around the search warrant with the trial judge holding that the affidavit for search warrant was sufficient and therefore the search by authority of the search warrant was legal.

Police Lieutenant Jay Clinton testified on page 31 of the preliminary transcript, in answer to the question: "What was the basis for your affidavit?" "Basis was the incommunication with the pilot. He stated there was a field with head feed or maize around it that had hoses that looked similar to the field that we were searching on the same property." Suspicion is not sufficient

grounds on which to predicate issuance of a search warrant. *Hagler v. State,* 663 P.2d 1235 (Okl.Cr.1983), *Sanders v. State,* 610 P.2d 247 (Okl.Cr.1980), and *Thomas v. State,* 573 P.2d 1225 (Okl.Cr.1978). Nonetheless, on the basis of suspicion presented by the Highway Patrol Pilot concerning a "similar field" and the trash burning, an affidavit for search warrant was drawn by the Assistant District Attorney and the warrant was issued. As I view the affidavit for search warrant deduced from the testimony of the witnesses, it was clearly insufficient. Consequently, the search warrant was invalid. It is the opinion of this writer that appellant's motion to suppress the evidence obtained by search warrant should have therefore been granted.

## II.

The irony of this trial is that no evidence of growing of marijuana was found on the farm of Floyd Guthrie, appellant. Six 25 lb. sacks of marijuana were found in a grain bin located on the farm, but two defense witnesses testified that two days prior to the search they observed C.O. Guthrie on Floyd's farm with his pick up truck backed up to the bin and that he was placing a sack of something in the bin. When C.O. Guthrie was called as a witness for the defense, he was advised by his counsel not to testify for the reason his testimony might incriminate him, since his trial was still pending. Another bit of incriminating evidence was the window screens found in the loft of appellant's barn which contained particles of marijuana. Appellant explained that by asserting that a young man who had worked for him must have placed them in the loft. He related that he fired the young man when he found him smoking marijuana. And then there was a long piece of irrigation pipe laying across appellant's field, but not long enough to reach the "similar field" referred to by the Highway Patrol Pilot. One of defendant's witnesses testified that the green patch resulted from seepage in that particular location, which offered some reasonable explanation.

Even so, the testimony of one of the officers related that the stubble the pilot referred to was corn stalks that had been plowed up. There was considerable testimony and argument by the district attorney concerning appellant's burning something soon after appellant left C.O. Guthrie's farm during the search of that farm. But when the ashes were inspected, nothing resembling marijuana was found in the ashes. Appellant asserted he was burning trash.

The evidence provided by the State simply was not sufficient to prove that any marijuana whatsoever was grown on appellant's farm. When the U.S. Soil Conservation Agent was testifying concerning the aerial photographs taken of the area on July 23, 1980, which included appellant's farm, he could not testify with certainty that the green patch was marijuana. Likewise, the fact that the sacks of marijuana were found in the grain bin, coupled with the testimony of two unbiased witnesses who saw C.O. Guthrie place a sack in the bin, seems to me to refute the State's contention of knowledgeable possession of marijuana by appellant. The grain bin was accessible to anyone who should come on to appellant's property. Anyone could have placed the sacks in the bin without appellant's knowledge. Testimony showed the bin door to be open when the police authorities arrived at the scene.

Without presuming to chastise the trial judge, when the motion for new trial was ruled on, after reciting some of the evidence presented, the Judge stated, "I'm convinced to a moral certainty that in the summer of 1980 from those aerial photographs that *something* was being irrigated back there inside that little square on Mr. Guthrie's property ...." (Emphasis added) This whole conviction seems to be premised upon "something."

The sixth syllabus to *Brown v. State,* supra, states:

Possession may be proved by circumstantial evidence but conviction on circumstantial evidence cannot be sustained if proof does not exclude every other rea-

sonable hypothesis except that of guilt; and proof amounting only to strong suspicion or mere probability is insufficient.

This conviction commenced with suspicion and the conviction was obtained on surmises and circumstantial conjecture and should not be allowed to stand.

### III.

In summary I am of the opinion that appellant is entitled to a new trial. The affidavit submitted by appellant's brother admitted that he placed the marijuana in his brother's bin. Had C.O. Guthrie been allowed to testify, I believe different results might have been reached.

This writer is cognizant of the fact that C.O. Guthrie's testimony was not literally "newly discovered" in the sense that appellant did not suspect that his brother had, without appellant's knowledge, secreted the marijuana in the bin. The evidence was not available at the time of trial, however, because C.O. invoked his constitutional right not to incriminate himself. The black letter of the law should not prevent the spirit of the law from being carried out.

C.O. Guthrie's testimony is material. Appellant exercised due diligence in presenting the evidence at trial, but ran into a constitutional stumbling block. Although slight evidence of C.O.'s responsibility for the presence of marijuana on appellant's land was presented to the trial court, there is at least a reasonable probability that C.O.'s testimony would have changed the results of the trial. *See Marlow v. City of Tulsa*, 564 P.2d 243 (Okl.Cr. 1977). Therefore, I respectfully dissent to this opinion and would grant a new trial.